IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JOSHUA K. SCOTT-DAVENPORT                                                              PLAINTIFF

v.                          Civil No. 13-2084

CAROLYN W. COLVIN[1], Commissioner
Social Security Administration                                                         DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Joshua Scott-Davenport, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for disability insurance benefits ("DIB") and supplemental insurance benefits ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

I.   **Procedural Background:**

The Plaintiff filed his application for DIB and SSI in April 2, 2010[2], alleging an onset date of April 1, 2009, due to the residuals of full-thickness burns suffered to his neck and upper extremities representing 15% of his total body surface, headaches, and mental impairments. Tr. 160, 170, 180, 188-189, 206, 223. His claims were denied both initially and upon

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

[2] A prior application was denied at the reconsideration level on September 6, 2007, but pursued no further. Tr. 72, 147-149.

reconsideration. Tr. 73-91. An administrative hearing was then held on May 12, 2011. Tr. 11, 26-69. Plaintiff was both present and represented at that hearing.

At the time of the administrative hearing, Plaintiff was 25 years old and possessed a high school education with four years of college. Tr. 19, 171. He had no past relevant work ("PRW") experience. Tr. 19, 161-168, 172.

On June 24, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, Plaintiff's status post burns to 15 percent of his body, depressive disorder, and posttraumatic stress disorder ("PTSD") did not meet or equal any Appendix 1 listing. Tr. 13-15. The ALJ determined that Plaintiff maintained the residual functional capacity ("RFC") to perform light work

> except he can do not more than occasional overhead reaching bilaterally. He can perform work limited to simple, routine, and repetitive tasks involving simple, work-related decisions with few, if any, work place changes. He can have no more than occasional interaction with the public, supervisors, and coworkers. He cannot work in any jobs that require him to work without clothing covering his body from his feet up to the middle of his neck, excluding his hands.

Tr. 15. With the assistance of a vocational expert, the ALJ concluded Plaintiff could perform work as an assembler, machine tenderer, and inspector. Tr. 20.

The Appeals Council denied Plaintiff's request for review on January 24, 2013. Tr. 1-6. Subsequently, Plaintiff filed this action. ECF No. 1. This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. ECF No. 11, 14.

2

## II.  **Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If we find it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, we must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

3

### A. The Evaluation Process:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)-(f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III. Discussion:

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and are repeated here only to the extent necessary.

On appeal, Plaintiff raises the following issues: 1) the ALJ failed to fully and fairly develop the record by obtaining an RFC assessment from Plaintiff's treating physician, Dr. John Williams; 2) the ALJ failed to properly evaluate Plaintiff's subjective complaints; and, 3) the ALJ erred in his RFC determination. For the reasons detailed below, we disagree.

Plaintiff contends that the ALJ erred by failing to obtain an RFC assessment from his treating physician, Dr. John Williams. The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo*

4

*v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). Contrary to Plaintiff's allegation, the ALJ properly developed the record in this case.

Here, the record contains numerous treatment records from Dr. Williams. As a brief introduction, the record reveals that Plaintiff was involved in a motor vehicle accident in 2005, and suffered severe burns to his head, neck, anterior trunk, and upper extremities during extrication. Tr. 223-239. He underwent skin grafts to his arms, trunk, chin, and neck. In April 2010, Katy Trotter, a nurse practitioner with Dr. John Williams, made the following observation:

> [Plaintiff] [h]as been on steady amounts of Ativan and Xanax for anxiety. Was initially on Morphine after accident then steadily kept on Oxycodone, Hydrocodone, and other unknown pain meds. Discussed possibility of addiction and denied and refused help. Discussed mechanis of action of narcotics and Benzodiazepines and addictive nature versus medications in antihistamine family for anxiety and Neurontin for pain. Refused either. Requested pain meds. Frustrated with other meds and alternatives or lifestyle changes. Cautioned on use of pain clinics/prescribers as previous prescriber lost license in a pill mill type activity. Instructed on use of Oxycodone currently and need for greater and greater amounts and soon addictions with remaining pain. Plaintiff not receptive. Somewhat angry. Explained that I do not perform chronic pain therapy and offered referral to trusted pain clinic to Dr. Fisher at River Valley Musculoskeletal and patient disappointed and refuses me to make appointment.

Tr. 276-277. This was echoed by Dr. Williams a few weeks later, when he indicated that Plaintiff's narcotic suppliers had "dried up," and that he continued to "experience the need for these and/or other alternatives." However, at this time, Plaintiff conceded that his discomfort was more of a drawing and pulling sensation than actual pain. Tr. 284-285. Dr. Williams

diagnosed him with generalized pain, burns, and drug dependence. He prescribed Tramadol and Neurontin. And, in early May 2010, Plaintiff acknowledged some improvement in his discomfort, and conceded that his discomfort was now more in the form of frustration. Tr. 283-284. *Patrick v. Barnhart*, 323 F.3d 592, 596 (8th Cir. 2003) (holding if an impairment can be controlled by treatment or medication, it cannot be considered disabling). However, a few weeks later, he returned with flank pain he alleged was due to kidney stones. At this time, he was given Lortab and instructed to strain his urine. Tr. 281-282.

On May 24, 2010, Dr. Rebecca Floyd conducted a general physical examination of Plaintiff. Tr. 261-264. The examination was essentially normal, aside from the obvious scarring and skin grafting, decreased sensation over the burn areas, and mild-to-moderate shoulder abduction limitation due to his skin graft restriction. She assessed him with mild to moderate limitation with excessive lifting overhead.

On June 17, 2010, Dr. William Payne, a non-examining physician reviewed Plaintiff's medical records and concluded that Plaintiff could perform light work with occasional overhead work. Tr. 267-274. This was affirmed by Dr. Alice Davidson when she reviewed Plaintiff's medical records on September 7, 2010. Tr. 291-292.

The record does reveal that Plaintiff continued to seek out treatment from Dr. Williams and his associates at River Valley Primary Care Services through May 11, 2011. However, these services were for reasons other than his alleged residual burn pain.[3] He was prescribed Lortab and Ultracet on a short-term basis for the pain associated with his kidney stones and dental issues,

---

[3]Plaintiff sought treatment for acute bronchitis, a pariapical alveolar abscess, kidney stones, dental carries, anxiety, and back pain resulting from a fall off of a roof. Tr. 277-281, 322-329.

6

which appear to have responded well to treatment. *Id*. He was also prescribed Risperdal for his anxiety. Tr. 325-326. However, on May 22, 2011, Plaintiff told Nurse Trotter that he was no longer taking the Risperdal because he felt his anxiety was better "not taking it." At that time, he stated that he had fallen off of a roof while carrying shingles, injuring his back. Nurse Trotter diagnosed him with lumbago after documenting no visible or palpable tenderness. She prescribed Flexeril, and told him she would not give him any narcotic pain medications due to his history. Tr. 322-323.

It is evident that the record was left open for Dr. Williams to provide a letter on the Plaintiff's behalf, but he declined to do so. Therefore, we find that the ALJ did not fail to develop the record by not requesting an RFC assessment from Dr. Williams. It is clear that the limitations imposed by Plaintiff's scarring and skin grafts were taken into account by Drs. Floyd, Payne, and Davidson.

In his second argument, Plaintiff asserts that the ALJ failed to properly evaluate his subjective complaints by improperly focusing on his lack of treatment and medication, his reported activities, and his alleged dependency on prescription pain medication. The ALJ's credibility determinations are given deference "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). "This court will not substitute its own opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence." *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007) (citations omitted).

The ALJ provided several reasons for his credibility determination. One of the main reasons for his determination is the fact that the objective medical record did not support

7

Plaintiff's subjective complaints. *See Forte v. Barnhart*, 377 F.3d 892, 895 (8th Cir. 2004) (holding that lack of objective medical evidence is a factor an ALJ may consider). However, this was not the only reason. The record also makes clear that the Plaintiff worked odd jobs during the relevant time period. *See Naber v. Shalala*, 22 F.3d 186, 188-89 (8th Cir.1994) (working generally demonstrates an ability to perform substantial gainful activity). At the hearing, he testified that he had worked for FEMA for eight hours per day, four days per week for a period of time. In October 2010, he told Nurse Laura Henson at Dr. Williams' office that he would be starting a new job the following Monday, working with Franklin County. Tr. 328-329. In May 2011, he also indicated that he had fallen off a roof while helping a friend roof his house. Tr. 322-323. His earnings records also show a number of part-time jobs that did not rise to the level of substantial gainful activity, but did evidence his ability to work.

In addition, Dr. Williams' treatment notes make clear that Plaintiff was dependent on narcotics, which worsened his condition. And, contrary to Plaintiff's contention that the ALJ's consideration of this factor was somehow improper, we disagree. A claimant's misuse of medications is a valid factor in an ALJ's credibility determination. *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"). Likewise, we can discern no obligation on the part of the ALJ to make the Plaintiff aware of his consideration of the Plaintiff's drug seeking behavior when that factor is so clearly documented in the medical records. There is also no duty to conduct a DAA analysis unless the ALJ determines that drugs and/or alcohol are a contributing factor to a determination that Plaintiff is disabled. The record makes clear that the Plaintiff is not disabled, therefore, a DAA analysis would have been of no benefit in this case.

The evidence also makes clear that the pain and discomfort Plaintiff alleged to be severe enough to warrant narcotic pain medication was not. And, said discomfort responded well to a combination of Tramadol and Neurontin. *See Patrick*, 323 F.3d at 596. Further, Plaintiff sought out no further treatment for this alleged discomfort after Dr. Williams refused to prescribe narcotic pain medications. *See Edwards v. Barnhart*, 314 F.3d at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). And, although Plaintiff contends that his failure to do so is excused by his financial inability to obtain treatment, we can find no evidence to support this. The record documents nothing to suggest that Plaintiff was ever denied treatment due to his inability to pay. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (holding that the ALJ correctly discounted the plaintiff's subjective complaints when there was no evidence that the plaintiff was ever denied medical treatment due to financial reasons). Further, we note that River Valley Primary Care Services, the facility operated by his primary care physician Dr. Williams, offers medical services to unisured patients and provides medication through their Prescription Assistance Program. *See* River Valley Primary Care Services, *About Us*, http://www.rvpcs.org/AboutUs/tabid/13339/Default.aspx (Last accessed July 9, 2014).

Accordingly, the ALJ provided good reasons for his credibility finding, and those reasons are supported by the record and are consistent with controlling law.

We also reject Plaintiff's assertion that the ALJ erred in failing sufficiently to explain his determination that his grandfather was not credible. As detailed above, the ALJ gave multiple valid reasons for finding Plaintiff's alleged limitations not entirely credible. *See Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir.2001) (deference to ALJ is appropriate when he explicitly discredits

9

claimant and gives good reasons for doing so).  Although he did not specifically address the credibility of Plaintiff's grandfather, the reasons the ALJ gave for discrediting Plaintiff would have served as bases for discrediting his grandfather.  *See Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir.2000) (ALJ's failure to give specific reasons for disregarding testimony of claimant's husband was inconsequential, as same reasons ALJ gave to discredit claimant could serve as basis for discrediting husband).  Accordingly, we find that the examples cited by the ALJ constitute good reasons for his credibility determination, which is supported by substantial evidence and will be affirmed.

Lastly, Plaintiff contends that the ALJ erred in his RFC determination by relying on the assessment of a non-treating medical consultant.  Again, we disagree.  While we do note that the only physical RFC assessments contained in the record were completed by one time (Dr. Floyd) or non-examining consultants (Drs. Payne and Davidson), we find that these assessments are supported by the overall record, and therefore constitute substantial evidence.  *See, e.g.,* 20 C.F.R. § 416.927(d)(3) ("[B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.").  And, given Dr. Williams refusal to submit a letter on Plaintiff's behalf, we do not feel that remanding this matter for the ALJ to obtain an RFC assessment from him is warranted.

The record also contains two mental RFC assessments.  While we note that the Plaintiff has alleged a great degree of limitation due to anxiety and depression, this is simply not supported by the record.  As documented above, Plaintiff has sought out limited treatment for his mental impairments, and has never sought out professional mental health treatment.  *See Kirby v. Astrue*,

10

500 F.3d 705, 709 (8th Cir. 2007) (lack of formal treatment by a psychiatrist, psychologist, or other mental health professional is a significant consideration when evaluating Plaintiff's allegations of disability due to a mental impairment). Instead, he obtained medication only from his primary care doctor.

On October 18, 2010, Dr. Terry Efird conducted a mental evaluation of Plaintiff. Tr. 293-297. He was vague in his responses, reporting dreams about the car accident in which he sustained his burns, intrusive thoughts on a weekly basis, and distressing dreams. He also reported sleep difficulties, irritability (sometimes), difficulty concentrating, hypervigilance, and an exaggerated startle response. Dr. Effird noted that his mood was generally dysphoric, and his affect a bit restricted in range. He diagnosed Plaintiff with PTSD and depressive disorder NOS. In noting that Plaintiff's global assessment of functioning score was difficult to assess, he assigned him a GAF of 50-60. Dr. Effird found that the Plaintiff had the capacity to perform the basic cognitive tasks required for basic work-like activities, appeared able to tack and respond adequately for purposes of the evaluation, had no remarkable problems with attention/concentration, generally completed most tasks during this evaluation, had no remarkable problems with persistence, appeared to have the mental capacity to persist with tasks if desired, completed most tasks within an adequate time frame, and had no problems with mental pace of performance.

On October 25, 2010, Dr. Cheryl Woodson-Johnson, a non-examining, consultative psychologist completed a psychiatric review technique form and a mental RFC. Tr. 302-318. After reviewing Plaintiff's medical records, she concluded he would have moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended

periods, sustain an ordinary routine without special supervision and without being distracted, complete a normal work-day and work week without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others.  Dr. Woodson-Johnson also opined that the Plaintiff could perform work where the interpersonal contact was incidental to the work performed, the complexity of the tasks was learned and performed by rote with few variables and little judgment involved, and the supervision required was simple, direct, and concrete.

We also note that the Plaintiff reported discontinuing Risperdal in May 2011, stating that he felt his anxiety was better without medication.  To the undersigned, this clearly evidences improvement in the Plaintiff's level of anxiety and the symptoms associated therewith.  And, given the fact that the assessments of Drs. Woodson-Johnson and Effird are basically in concurrence as to the Plaintiff's mental limitations, we find that the ALJ's RFC determination is supported by substantial evidence.

### V.     Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 16th day of July 2014.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A (Rev. 8/82)